**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HERITAGE FOUNDATION**, et al., ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | Case No. 24-cv-00958 (ACR) |
| ) | |
| **U.S. DEPARTMENT OF JUSTICE** ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S REQUEST FOR A PRE-MOTION
CONFERENCE**

Plaintiffs respectfully respond to Defendant's Request for a Pre-Motion Conference.  (ECF No 17) ("Def. Req.").

I.      **Exemption 5.**

Defendant submits that executive privilege applies because "release of the audio poses an unacceptable risk of impairing cooperation in future high-profile investigations because the audio's disclosure could make witnesses less likely to cooperate with the Department's investigatory efforts[.]" Def. Req at 2.  Defendant further submits "[t]he audio recordings are exempt under Exemption 5 as protected attorney work product" because "they memorialize a witness interview, carried out during a criminal investigation, that was constructed and thought out by prosecutors." *Id.*

1.      **Executive Privilege:**  The Department asserts a free-standing claim of executive privilege under Exemption 5 that would allow the President to withhold any material on the grounds that it may impede future high-profile investigations.  This claim of executive privilege is not a traditional claim of Presidential communication privilege or deliberative process—it is a new and freestanding formulation.  It has no limiting principle.  And it has also been decisively rejected by former Attorney General Michael Mukasey.  *See* Declaration of Attorney General Michael Mukasey, 24-cv-700(TJK) (June 18, 2024) (ECF No. 40-3).  This formulation of Exemption 5,"is contrary to FOIA's statutory scheme.  Law enforcement privileges are analyzed under Exemption 7—not Exemption 5.  *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.,* 658 F. Supp. 2d 217, 232 n. 9 (D.D.C. 2009) ("*CREW I*") (in dicta).

2      **Attorney Work Product Doctrine:**  To begin, the interview *itself* surely was not privileged—it was an interview of a potential criminal defendant and thus there was zero expectation of confidentiality.  *See, e.g., United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C.

Cir. 2010) (disclosure to adversary destroys work product).  Accordingly, the audio recording is also not privileged.  *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, No. 02-cv-6942 (MMM), 2003 WL 27374179, at \*4–\*7 (C.D. Cal. Dec. 23, 2023) (presence of potentially adverse party at interview waived work product as to transcript of that interview); *see also In re Enforcement of Subpoena Issued by F.D.I.C.*, No. 3:11-mc-80066 (CRB), 2011 WL 2559546, at\*2 (N.D. Cal. June 28, 2011) (transcript not work product).

Further,  there are substantial factual questions concerning waiver.  Redacted transcripts of Zwonitzer's interviews with Special Counsel Hur have already been quoted in the Hur Report and released to the public and may well have been released to Zwonitzer and his counsel prior to public release.  How can one assert work product over the audio of text already made public?  The Department has acknowledged a copy of the audio recording of President Biden's interview with Special Counsel Hur was made available to White House Counsel and President Biden's personal counsel "as appropriate" to "determine the accuracy of the transcripts."  *See* Declaration of Bradley Weinsheimer ¶ 15, No. 24-cv-700 (TJK) (May 31, 2024) (ECF No. 34-2).

## II.   Exemption 7(A).

The Department intends to argue that the release of audio recordings "could reasonably be expected to interfere with enforcement proceedings" both for the reasons that the Attorney General related in his letter to President Biden and because "the Department is aware of current, ongoing investigations in which the Department believes that release of the audio recordings could chill witness participation" in "high-profile" investigations.  Def. Req. at 4.  Plaintiffs anticipate relying on *CREW v. DOJ,* 658 F.Supp.2d 217 (D.D.C. 2009) ("*CREW I*"), which decisively rejected the same arguments 15 years ago.  Nothing has changed since then and experience dictates that notwithstanding the decision in *CREW I*, individuals regularly and voluntarily cooperate with

"high profile" investigations—Exhibit A:  Zwontizer's voluntary cooperation in this very case.  It is the Department's burden to demonstrate how release might "reveal the government's case in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence."  *Maydak v. DOJ*, 218 F.3d 760, 762 (D.C. Cir. 2000).  The mere assertion that *some* (unspecified) witnesses in *some* (unspecified) investigations might opt out of an interview if these audio recordings are released is an insufficient basis for Exemption 7(A).

III.     **Exemptions 6 & 7(C).**

Plaintiffs do not dispute that Zwonizter has *some* cognizable privacy interest under FOIA. But that interest is substantially diminished.  There is no dispute that Zwonitzer's involvement in Special Counsel's Hur's investigation is public.  There also is no dispute that the *content* of much of Zwonitzer's involvement is public via the Hur Report itself and the release of the redacted transcript of his interviews with Special Counsel Hur.  That substantially diminishes Zwonitzer's privacy interests.  *See, e.g., CREW v. DOJ*, 746 F.3d, 1082, 1092 (D.C. Cir. 2014) ("*CREW III*"); *Nation Mag., Washington Bureau v. U.S. Cust. Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).

On the flip side of the coin, the public interest is great.  The D.C. Circuit has "repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy."  *CREW III*, 746 F.3d at 1093.  As the D.C. Circuit has explained, relevant to that interest (in the context of a specific criminal investigation) is "the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion:  whether the government had the evidence but nevertheless pulled its punches."  *Id.*; *accord id.* at 1093–94 (collecting authorities); *CREW v. DOJ*, 854 F.3d 675, 682 (D.C. Cir. 2017) ("*CREW IV*") (same).  That interest may be amplified by "[w]idespread media attention, an ongoing public policy discussion, and the

public profile of the subject of the investigation[.]"  *CREW v. DOJ*, 978 F.Supp.2d 1, 13 (D.D.C. 2013) ("*CREW II*").

The audio recordings at issue here would allow the American People to judge for themselves key disputed portions of the Special Counsel's Report.  One example is illustrative and dispositive.  The President *himself* denied sharing classified information with his ghostwriter, a statement that is inconsistent with the Special Counsel's findings.  *See* https://www.whitehouse.gov/briefing-room/speeches-remarks/2024/02/08/remarks-by-president-biden/.   Special Counsel Hur joined issue during his Congressional testimony.

> Mr. GAETZ.  February 8th the White House questioned, ''Mr. President, why did you share classified information with your ghost writer?''  The President: ''I did not share classified information. I did not share it.  I guarantee I did not.''  That is not true, is it, Mr. Hur?
> Mr. HUR.  That is inconsistent with the findings based on the evidence in my report.

Hearing on the Report of Robert K. Hur: Hearing Before the H. Jud. Comm., 119th Cong.  30–31.

Thus, the President has directly put at issue a core aspect of Zwonitzer's testimony—the nature and extent of classified information revealed by President Biden to Zwonitzer.  That brings the entire matter of Zwonizter into public dispute.  What did Zwonitzer do?  What classified information did he obtain?  The audio recordings are not cumulative of *that* point as to Special Counsel Hur's Report precisely because the President contested whether he disclosed *any* classified information to Zwonitzer—which puts Zwonitzer's involvement directly in issue.  The American People have the right to judge for themselves a dispute between the President and his subordinate Special Counsel.

Dated:  July 5, 2024

Respectfully submitted,

/s/ Eric Neal Cornett
ERIC NEAL CORNETT
(No. 1660201)

Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email: neal@cornettlegal.com

SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email: samueledewey@sedchambers.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone: (202) 617-6975
Email: Dan.Mauler@heritage.org

KYLE BROSNAN
(No. 90021475)
The Heritage Foundation
Telephone: (202) 608-6060
Email: Kyle.Brosnan@heritage.org

MAX TAYLOR MATHEU
(No. 90019809)
Telephone: (727) 249-5254
Email: maxmatheu@outlook.com

*Counsel for Plaintiff*s

5